UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cr-60175-WPD

UNITED STATES OF AMERICA

vs.

CHIRAC HILAIRE,

Defendant,
_____/

## FACTUAL PROFFER

The United States of America, CHIRAC HILAIRE ("Defendant"), and the Defendant's counsel agree that, had this case gone to trial, the United States would have proven the following facts beyond a reasonable doubt, and that such facts are sufficient to establish the Defendant's guilt as to the offenses charged in the Indictment:

1.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.

2.      The Economic Injury Disaster Loan ("EIDL") program was a Small Business Administration ("SBA") program that existed before the COVID-19 pandemic to provide low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

3.      The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In order to obtain a COVID-19 EIDL, a qualifying business was required to submit an EIDL application to the SBA

and provide information about its operations, such as the number of employees, gross revenues, and the cost of goods sold in 2019. If an EIDL application was approved, funds were issued directly by the SBA.

4.      Another source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.

5.      PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

6.      In or around June 2019, the Defendant formed Hilaire LLC and registered the entity with the Florida Department of State. The Defendant was listed as the entity's registered agent and sole manager. On or about June 17, 2020, the Defendant opened a business checking account at Wells Fargo in the name of Hilaire LLC and ending in 8104 ("Account 8104"). The Defendant was the sole signatory on the account.

7.      On or about June 19, 2020, an EIDL application was submitted on behalf of Hilaire LLC. The application claimed that Hilaire LLC was engaged in "Legal Services," had 5 employees, and generated revenue of approximately $120,000 in 2019. The EIDL application was approved by the SBA. On or about June 23, 2020, $59,900 of EIDL proceeds were transferred into Account 8104.

8.      On or about June 24, 2020, a PPP loan was submitted on behalf of Hilaire LLC. This time, the application claimed that Hilaire LLC had 12 employees and an average monthly payroll of $40,000. The PPP loan application was ultimately approved by BlueVine. On or about June 26, 2020, $100,000 of PPP loan proceeds were transferred into Account 8104.

9.      In reality, Hilaire LLC was not operational during the COVID-19 pandemic and did not have any employees. Additionally, none of the historical business information included on the June 19, 2020 and June 24, 2020 applications was accurate.

10.     Once the loan proceeds were deposited into Account 8104, the Defendant made several large cash withdrawals from the account amounting to approximately $40,000, which included a withdrawal of $12,000 on June 26, 2020. Additionally, more than $10,000 was proceeds of a specified unlawful activity, that is wire fraud.

11.     The defendant knew that the monies obtained and transferred were a result of proceeds from fraudulent activity. These transactions took place in the United States, and the property was in fact proceeds of unlawful activity.

12.     The Defendant's conduct in this case affected interstate commerce.

3

13.     These are not the only facts known to the United States in this matter, nor are they

all the facts the United States would have presented had this case gone to trial.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: _12/27/2022_          By:     _____
                                    LAUREN ASTIGARRAGA
                                    ASSISTANT UNITED STATES ATTORNEY

Date: _12|27|2022_          By:     _____
                                    DAVID BRAUN                Ana C
                                    ATTORNEY FOR DEFENDANT     Braun
                                                               #13389

       December 22, 2022
Date: _____       By:     _____
                                    CHIRAC HILAIRE
                                    DEFENDANT